ELIZABETH D. LAYTON, Original Plaintiff, Movant, and ELIZABETH D. LAYTON, Guardian of ANNETTE DAVIS LAYTON and ERNESTINE LAYTON, Minors, Additional Plaintiff v. E. C. LAYTON, Original Defendant, and ORA B. LAYTON, Individually, and ORA B. LAYTON, Administratrix of E. C. LAYTON, Deceased, and ERNEST CLINTON LAYTON and Wife, CLARA LEE BAILEY LAYTON; ELEANOR L. EDWARDS and Husband, DAVID EDWARDS; MARIE L. SHADDRICK and Husband, ROBERT SHADDRICK; LUCY L. CANNADY and Husband, JONES CANNADY; MAVIS L. NELMS and Husband, RUSSELL NELMS; JULIUS ("BILLIE") LAYTON and Wife, JENNY GREY S. LAYTON; RONALD LAYTON and Wife, BARBARA DELL D. LAYTON; DORA SUE LEONARD and Husband, DARRELL LEONARD; JAMES LAYTON and Wife, AGNES C. LAYTON, and JOHN F. MATTHEWS, Commissioner, Additional Defendants.

(Filed 15 January, 1965.)

**1. Parent and Child § 6—**

The duty of a father to support his child is not a debt in the legal sense nor a property right of the child, but is an obligation imposed by law, and if the child is incapable of self-support after majority because of physical or mental disability, such obligation continues.

**2. Common Law—**

Principles of the common law which have not been abrogated or modified by statute are in full force and effect in this jurisdiction.

**3. Parent and Child § 6—**

    A father may by contract create an obligation to support his child which will survive the father's death and constitute a charge against the father's estate, but in order to do so such agreement must express a clear intention that the obligation should survive the death of the father.

**4. Same; Judgments § 10—**

    A consent order for the support of the children of the marriage is a contract and is to be construed to ascertain the intent of the parties as gathered from its language, and it cannot be modified or set aside without consent of the parties except for fraud or mistake.

**5. Parent and Child § 6—**

    After disagreement for a period of time over the amount the father should pay for the support of the children of the marriage, and after three orders fixing different amounts for support had been successively entered, a consent order fixing a stipulated amount was entered, which consent order provided that neither party should seek change or modification thereof except for extreme emergency until a specified term of court. The children of the marriage were permanently disabled from earning a living. *Held:* The contractual obligation to support the children of the marriage did not survive the death of the father, the intent that it should do so not being expressed or clearly implied in the agreement.

APPEAL by plaintiff from *McKinnon, J.,* April 1964 Term of FRANKLIN.

*John F. Matthews* for *plaintiff appellant.*

*William P. Pearce, Jr.,* for *Ora B. Layton, Individually and as Administratrix.*

*W. H. Taylor* for *Adult Children of E. C. Layton, Deceased, by his First Marriage.*

MOORE, J. This appeal raises the question whether a superior court order, consented to by E. C. Layton, for support and maintenance of his two minor children created an obligation which survives his death and constitutes a charge against his estate and a lien on his land.

E. C. Layton was married four times. Nine children were born to his first marriage and all are now adults and *sui juris*. There are two children of his second marriage, Annette and Ernestine, ages 18 and 16. Annette has suffered physical disability because of rheumatic fever. Ernestine is so mentally deficient that she is permanently incapable of self-support.

Layton and his second wife, Elizabeth D. Layton, mother of Annette and Ernestine, separated in 1947. Elizabeth instituted an action for alimony without divorce in September 1947. Orders for alimony *pen-*

*dente lite* and support of children were entered in 1948 and 1950. An order, entered by consent of the parties, on 29 January 1951, is in pertinent part as follows:

". . . the said E. C. Layton shall pay to the plaintiff (Elizabeth D. Layton), for the support and maintenance of the two children, Annette Layton and Ernestine Layton, the sum of Fifty Dollars per month . . . on or before the 10th day of each month, beginning the 10th day of February 1951.

". . . the plaintiff Elizabeth D. Layton and her said two children shall have the right to use and occupy the dwelling in which she is now living with her said two children."

(The next paragraph deals with visitation rights of E. C. Layton.)

"It is understood and agreed that this order shall not be changed or modified, and that neither of the parties will seek to have the same changed or modified, until the January Term 1952, . . . of Franklin County Superior Court, except in case of extreme emergency."

Layton made the payments provided for in this order until his death on 7 September 1961. Meanwhile he obtained an absolute divorce from Elizabeth and married twice more. His fourth wife is administratrix of his estate. He left a will, but in *caveat* proceedings it was declared null and void by reason of his two marriages subsequent to the execution of the will.

After payment of debts, the widow's year's allowance, and certain charges of administration the balance of the personal estate is $402.82. The lands were sold for partition and the commissioner has on hand for disbursement $32,920.32 from the proceeds of the sale.

The sale for partition was confirmed on 25 April 1962. On 1 May 1962 the support order of 1951 was "docketed as a judgment for the payment of money in Judgment Docket No. 12 at page 3, in the Office of the Clerk of the Superior Court of Franklin County."

On 13 August 1962 Elizabeth D. Layton filed a motion in the cause *(Elizabeth D. Layton v. E. C. Layton)* asserting that the order of 1951 requiring E. C. Layton to pay $50 per month for support of Annette and Ernestine is a money judgment for the payment of which E. C. Layton's estate is responsible after his death, and is a lien on the proceeds from the sale of land in the hands of the commissioner. The heirs at law of E. C. Layton, his administratrix, and the commissioner were made parties defendant. Answers were filed resisting the motion.

The parties waived jury trial. The matter was heard upon stipulations and parol and documentary evidence. The court found facts (substantially as set out hereinabove) and concluded as a matter of law that the 1951 support order "did not create a money obligation on E. C. Layton which survived his death and is not enforceable against his estate," and the said order and the docketing thereof in the Judgment Docket "did not create a lien against the lands . . . nor against the funds derived from the sale of said lands," and that the commissioner "should distribute the funds in his hands . . . free from the claim or alleged lien arising out of the issuance of the Order . . . on January 29, 1951." Judgment was entered accordingly. Plaintiff, as guardian of the minor children, appeals.

"The relationship of parent and child is a status, and not a property right." 67 C.J.S., Parent and child, § 2, p. 628. At common law it is the duty of a father to support his minor children. *Elliott v. Elliott*, 235 N.C. 153, 69 S.E. 2d 224; *Green v. Green*, 210 N.C. 147, 185 S.E. 651; *Blades v. Szatai*, 135 A. 841, 50 A.L.R. 232. And where a child is of weak body or mind and unable to care for itself after coming of age, the duty of the father to support the child continues as before. *Wells v. Wells*, 227 N.C. 614, 44 S.E. 2d 31, 1 A.L.R. 2d 905; 39 Am. Jur., Parent and Child, § 69, p. 710. The common law obligation of a father to support his child is not "a debt" in the legal sense, but an obligation imposed by law. *Ritchie v. White*, 225 N.C. 450, 35 S.E. 2d 414. It is not a property right of the child but is a personal duty of the father which is *terminated by his death. Elliott v. Elliott, supra; Lee v. Coffield*, 245 N.C. 570, 96 S.E. 2d 726; *Blades v. Szatai, supra. These* common law principles have not been abrogated or modified by statute and are in full force and effect in this jurisdiction. G.S. 4-1; *Elliott v. Elliott, supra.*

The support of a child by a parent may be the subject of contract and a father may by contract create an obligation to support his child which will survive his death and constitute a charge against his estate, in which case the ordinary rules of contract law are applicable. *Church v. Hancock*, 261 N.C. 764, 136 S.E. 2d 81; *Stone v. Bayley*, 134 P. 820; 39 Am. Jur., Parent and Child, § 69, p. 710. Such contracts are not against public policy, but there must be a clear intention that the obligation survive the death of the parent. *Stone v. Bayley, supra.*

"A consent judgment is the contract of the parties entered upon the records with the approval and sanction of a court of competent jurisdiction, and its provisions cannot be modified or set aside without the consent of the parties, except for fraud or mistake." 3 Strong: N. C. Index, Judgments, § 10, p. 16; *Church v. Hancock, supra.* The consent

order of January 1951 is a contract for the benefit of E. C. Layton's minor children. Our inquiry is whether it created a debt in a legal sense which survived his death and became an obligation of his estate. We look to the intent of the parties to be gathered from the contract. *Stone v. Bayley, supra; Goodyear v. Goodyear,* 257 N.C. 374, 126 S.E. 2d 113.

From the institution of the action in 1947 until January 1951 there had been considerable disagreement as to the amount the defendant, E. C. Layton, should pay monthly. There had been three orders prior to January 1951 dealing with this subject. The amount was first fixed at $40 per month; this was later changed to $60; the consent order fixed the amount at $50 and provided that neither party should make any effort to change the amount prior to January 1952, except in case of extreme emergency. It is clear that the primary purpose of the consent order was to fix the amount of support. See *Blades v. Szatai, supra.* There is no provision, express or clearly implied, that the payments were to be continued after defendant's death. The order creates no lien upon any of E. C. Layton's property. There is no special consideration running to him as was the case in *Church v. Hancock, supra.* The contract is silent as to the time of termination of support payments. See 18 A.L.R. 2d 1133. It is clearly the intention of the father to meet his common law obligation to his children, and nothing more, and it was the intent and purpose of plaintiff and defendant that this obligation be fixed and certain as to amount. There is nothing in the contract which imposes upon E. C. Layton any obligation or debt over and beyond that required and limited by the common law principles stated above.

The judgment below is
Affirmed.